STONE, J.
| jThis criminal appeal arises from the 26th Judicial District, Webster Parish, the Honorable Parker Self, presiding. The defendant, J’son Turk, pled guilty to manslaughter in violation of La. R. S. 14:31 and was sentenced to 38 years at hard labor. J’son appeals, arguing that his sentence is excessive. For the following reasons, his sentence is affirmed.
FACTS
On August 27, 2014, the aunt of Omar Lott (“Lott”) found his partially decomposing body in a wooded area in Webster Parish, Louisiana. Lott, who had been missing for three days, had been shot six times. The autopsy report indicated Lott had been shot in the back, thigh, arm, and head while he was running away. Detectives learned that brothers J’son and Dylan Turk were among the last persons seen with Lott before his disappearance. Eventually, the brothers confessed that because Lott had previously stolen J’son’s gun, they lured Lott into a remote location under the pretense that he would be joining them in robbing a known drug dealer. When Lott arrived to participate in the robbery, J’son shot and killed Lott with a .45 caliber pistol. The brothers dragged the body into the woods in an attempt to conceal the crime.
J’son was charged with second-degree murder by an amended grand jury indictment. On October 12, 2015, after being advised of and waiving his rights, J’son entered a plea of guilty to manslaughter with no sentencing recommendation. A presentence investigation (“PSI”) report was ordered by the trial court. After reviewing the PSI, the trial court sentenced J’son, then 18 years old, to 38 years at hard labor. After a timely filed motion to | ¡¡reconsider sentence was denied by the trial court,[1] this appeal ensued.
*405 DISCUSSION
In his one assignment of error, J’son alleges the trial court erred by imposing an unconstitutionally harsh and excessive sentence. Specifically, J’son argues his age and social history merit a lesser sentence than that imposed. J’son contends the imposed sentence makes no measurable contribution to acceptable goals of punishment and amounts to nothing more than purposeful imposition of pain and suffering. He believes a sentence of significantly less than 38 years would provide him with the opportunity for rehabilitation and reentry into society as a productive member while he’s being punished for the convicted crime.
The state claims the trial court found a factual basis for the plea, had the benefit of a PSI report, and complied with the provisions of La. C. Cr. P. art. 894.1. Considering J’son planned the killing of Lott, lured him to a remote location under false pretenses without any justification, and received a considerable benefit from the plea agreement, the state contends the imposition of the 38-year sentence with the possibility of parole was within the trial court’s discretion.
At the time of J’son’s offense, La. R.S. 14:31 provided for imprisonment at hard labor for not more than 40 years for a manslaughter conviction.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show the |strial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record refleets he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Johnson, 48,320 (La.App. 2d Cir. 11/20/13), 127 So.3d 988; State v. Watson, 46,572 (La.App. 2d Cir. 09/21/11), 73 So.3d 471. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Jones, 398 So.2d 1049 (La. 1981); Johnson, supra; State v. Ates, 43,327 (La.App. 2d Cir. 08/13/08), 989 So.2d 259, writ denied, 08-2341 (La. 05/15/09), 8 So.3d 581. The important elements which should be considered are J’son’s personal history (age, family ties, marital status, health, and employment record), prior criminal record, the seriousness of the offense, .and the likelihood of rehabilitation. There is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 03-0518 (La. 12/03/03), 861 So.2d 144; State v. Thompson, 50,392 (La.App. 2d Cir. 02/24/16), 189 So.3d 1139.
Second, a sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La. 01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Allen, 49,642 (La.App. 2d Cir. 2/26/15), 162 So.3d 519, writ denied, 15-0608 (La. 1/25/16), 184 So.3d 1289. A sentence is considered grossly disproportionate if, whén the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La. 01/15/02), 805 So. 2d 166; Johnson, supra; State v. Sims, 49,682 (La.App. 2d Cir. *406 02/27/15), 162 So.3d 595, writ denied, 15-0602 (La. 02/5/16), 186 So.3d 1161. To constitute an excessive sentence, a court must find the sentence makes no reasonable contribution to acceptable penal goals. State v. Griffin, 14-1214 (La. 10/14/15), 180 So.3d 1262.
Maximum or near maximum sentences are generally reserved for the worst offenses and offenders. State v. Cozzetto, 07-2031 (La. 02/15/08), 974 So.2d 665; Sims, supra. The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7; Sims, supra. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App. 2d Cir. 10/24/07), 968 So.2d 875.
A substantial advantage obtained by means of a plea bargain is a legitimate consideration in sentencing. State v. Mendenhall, 48,028 (La.App. 2d Cir. 5/15/13), 115 So.3d 727; State v. Ross, 35,552 (La.App. 2d Cir. 02/27/02), 811 So.2d 176. Accordingly, where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence for the pled offense. State v. Givens, 45,354 (La.App. 2d Cir. 06/23/10), 42 So.3d 451, writ denied, 10-1584 (La. 01/14/11), 52 So.3d 902; State v. Germany, 43,239 (La.App. 2d Cir. 04/30/08), 981 So.2d 792; State v. Black, 28,100 (La.App. 2d Cir. 02/28/96), 669 So.2d 667, writ denied, 96-0836 (La. 09/20/96), 679 So.2d 430.
|fiAt the sentencing hearing, the trial court noted its review of the PSI report and the sentencing memorandum submitted by the state. The trial court reviewed letters from both Lott’s and J’son’s families. In the letters, J’son’s relatives, including his mother and aunt, requested that due to his admission of guilt and remorse, the court provide leniency. Lott’s relatives expressed the effect his murder and decomposing body had on the family and requested the maximum sentence.
J’son also made a statement in the PSI report. In the statement, J’son asserted Lott had been bullying him for a long time; he had taken money from J’son and was very violent toward him. J’son stated that “this is not something I wanted to do. I was forced to do it.” J’son also indicated that “I want to tell her [Lott’s mother] I’m sorry for what happened.” J’son expressed a desire to get his GED and to be a video game designer.
During the sentencing hearing, the trial court allowed J’son to make an additional statement for the record. J’son declared he “was fearing for [his] life” and was “trying to protect himself.” J’son maintained he was “very remorseful” for what he put the family through and stated he was sorry. J’son conceded he did not make a good decision.
The trial court considered J’son’s age, social history, and criminal background. At the time of sentencing, J’son was 19 years old, had been raised by his mother, and was not a victim of abuse. There were no drugs present during the crime; however, the court noted that J’son did admit to smoking synthetic marijuana. J’son completed the ninth grade but was expelled from school. He began working on his GED but had not obtained it. J’son had *407 held only one job, this was his first felony, and he had no juvenile record.
| fiThe trial court took note of J’son’s claim he had been bullied and’robbed by the victim and was defending himself. However, the court was unimpressed with J’son’s self-defense argument because the alleged robbery occurred a year before, and furthermore, J’son shot Lott six times as Lott was running away. The trial court did consider the fact that J’son, his brother, and Lott, had conspired to commit a crime together but ultimately found nothing to justify or mitigate J’son’s actions.
In its oral reasons, the trial court reiterated the fact that after J’son killed Lott, the two brothers moved Lott from the road, rifled through his pockets, removed the cell phone and cash he had, and threw the phone in the water. The brothers left Lott in the woods for several days and went back to Shreveport. The court further noted that some time after the murder, J’son asked Lott’s girlfriend if she had seen him, although he knew exactly where Lott was. Finally, the court considered that Lott’s aunt found his decomposing body, which could only be identified by a tattoo, and that the family was not able to give Lott a proper burial.
The court contemplated its responsibility to the community and the fact that J’son took the law into his own hands, having no regard for human life. The court described the situation as extremely atrocious and was disturbed by the fact that the body was just left “out there.” Prior to sentencing J’son to 38 years at hard labor, the court noted its obligation to make sure the punishment fit the crime.
The record before us reveals an adequate factual basis for the sentence. The trial court considered J’son’s social, family, and criminal history; aggravating and mitigating factors; and recognized J’son’s remorse and young age in fashioning a sentence. We find no abuse of discretion in the trial court’s judgment. J’son’s plan of luring Lott to a location where he 17robbed him and shot him six times demonstrates his total disregard for human life. Likewise, his action in leaving Lott’s body to rot is quite disturbing. Even with the history between J’son and Lott, the trial court was within its discretion in concluding that no mitigating factors were shown to justify the shooting.
J’son received a substantial sentencing benefit from his plea bargain which did not adequately describe his conduct. For a second-degree murder conviction, J’son faced a life sentence without the benefit of probation, parole, or suspension of sentence. Even with J’son’s lack of a criminal history and young age, when the crime and punishment are viewed in light of the harm done to society, the imposed sentence, with the benefit of probation, parole, or suspension of sentence, does not shock the conscious or sense of justice.
CONCLUSION
For the above reasons, the sentence of J’son Turk is AFFIRMED.

. J’son filed a timely pro se motion to reconsider sentence arguing that the imposed sentence was excessive due to his youth and lack of prior criminal record. J’son also argued that the imposition of his sentence “was motivated by the trial judge’s own hypothetical and assumed set of facts,” thus denying him his due process rights under the Fourteenth Amendment. Finally, J’son argued that the trial court engaged in conduct prejudicial to *405 the expeditious administration of the business of the court. J'son’s motion to reconsider sentence was denied by the court on March 7, 2016.